**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

**DISABILITY RIGHTS MISSISSIPPI**                                      **PLAINTIFF**

**VS.**                                      **CIVIL ACTION NO. 1:24-CV-99-SA-DAS**

**PALMER HOME FOR CHILDREN**                                      **DEFENDANT**

**MEMORANDUM BRIEF IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM**

COMES NOW Defendant Palmer Home for Children ("Palmer Home"), by and through its counsel of record, and submits this Memorandum Brief in support of Defendant's Motion to Dismiss the Complaint for Declaratory and Injunctive Relief filed by Plaintiff Disability Rights Mississippi ("DRMS") pursuant to Federal Rule of Civil Procedure 12(b)(6), and in support thereof would present the following:

**I.  BACKGROUND**

Plaintiff DRMS asserts in its Complaint that it acts as the Protection and Advocacy System ("P&A System") for individuals with disabilities in Mississippi. *See generally Complaint for Declaratory and Injunctive Relief* [Complaint – Dkt. 1]. DRMS further states that its authority is derived from the Developmental Disabilities Assistance and Bill of Rights Act (PADD), 42 U.S.C. § 15041 *et seq.*, the Protection & Advocacy for Individual Rights Act (PAIR), 29 U.S.C. §794e, and the Protection & Advocacy for Individuals with Mental Illness Act (PAIMI), 42 U.S.C. § 10801 *et seq.*. Dkt. 1 at ¶ 6. DRMS claims to have the authority under PADD, PAIR and PAIMI to monitor and investigate Palmer Home, seeking declaratory, preliminary and permanent injunctive relief from this Court to enjoin the child residential home from denying DRMS unaccompanied access to its facilities and to the minor residents who live there. Dkt. 1 at ¶ 2.

The paltry facts upon which DRMS bases its Complaint for preliminary and permanent injunctive relief are general and unverified. In its Complaint at Part III, DRMS alleges that Palmer Home is a proper party without any supporting affidavit that confirms that the child residential home is a facility under DRMS's jurisdiction. Although DRMS correctly alleges that Palmer Home is a child residential home regulated by the Mississippi Department of Health ("MSDH"), operating in Desoto County, Mississippi [Dkt. 1 ¶ 13-15], its remaining conclusory factual allegations lack any verification and fall short of what this Court requires when seeking injunctive relief:

> "*Upon information and belief,* a number of youths who reside at Palmer Home have mental illness, developmental disabilities, and/or other physical or mental impairments that substantially limit one or more life activities."

> "*Upon information and belief*, youths who reside at Palmer Home receive care, treatment, services, supports, and habilitation including, but not limited to: screening, evaluation, counseling, behavioral therapies, medication treatment, and supervision, assistive devices, and special education services."

Dkt. 1 at ¶¶ 16-17 (emphasis added).

The only other alleged facts, on which DRMS bases its entitlement to relief, are found in Part IV of the Complaint in its "Statement of Facts":

> "In late 2023, DRMS *received reports indicating potential abuse and neglect* at Palmer Home." ¶ 20 (emphasis added).

> "The complaint received by DRMS outlined several *serious concerns* from *former staff and residents*, including the *hiring of a convicted felon as campus director*, instances of *residents becoming pregnant* while in care, *allegations of verbal and emotional abuse*, reports of *suicide*, and the *termination of staff members* who attempted to report these incidents." ¶21 (emphasis added).

> "On April 9, 2024, DRMS sent a follow-up regarding the investigation as no acknowledgement or response had been provided by the Defendant. DRMS also informed counsel for the Defendant that, in connection with the investigation initiated, the agency had reached out to Mississippi Department of Health who *confirmed that children with disabilities had been observed* during their last facility [sic]." ¶28 (emphasis added).

Dkt. 1 at ¶20, 21, 28 (emphasis added). Even accepting these unverified "factual" allegations as true, none of them allege that a resident of Palmer Home has a "significant mental illness … as determined by a mental health professional" licensed in Mississippi or has developmental or other disabilities that substantially limit one or more major life activities of such individual *and* that this mentally ill or disabled individual is *being abused* at Palmer Home, invoking its jurisdiction under PAIMI, PADD or PAIR. The "unverified facts" as alleged in DRMS's Complaint fail to establish a reasonable factual basis to support DRMS's allegations that Palmer Home has violated any of these federal acts; therefore, DRMS's Complaint should be dismissed.

## II. STANDARD OF REVIEW FOR RULE 12(b)(6) MOTIONS

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a party may move to dismiss for "failure to state a claim upon which relief can be granted." The Fifth Circuit established the standard of review for a Rule 12(b)(6) Motion to Dismiss:

> We "accept as true all well-pleaded facts and construe the complaint in the light most favorable to the plaintiff." But we "do not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'"

> To withstand a motion to dismiss, a complaint must allege "more than labels and conclusions," as "a formulaic recitation of the elements of a cause of action will not do." It must state a "plausible claim for relief," rather than facts "merely consistent with" liability.

*Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (internal citations omitted). As this Court has explained, on a motion filed under Rule 12(b)(6), the Court determines whether the plaintiffs have pled "enough facts to state a claim to relief that is plausible on its face." *See Walker v. Tronox LLC*, No. 1:12CV039-SA-DAS, 2012 WL 1431422, at *1 (N.D. Miss. Apr. 25, 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)). On such a motion, the Court accepts well-pleaded facts as true, viewing them in the light most favorable to plaintiff. *See id.* In examining the sufficiency of the complaint, the Court will "begin

by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and next, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (internal citation omitted).

Where a plaintiff seeks preliminary or permanent injunctive relief, the law is clear – a verified complaint is necessary. *See Palmer v. Braun*, 155 F. Supp. 2d 1327, 1331 (M.D. Fla. 2001), aff'd 287 F.3d 1325 (11th Cir. 2002) ("A plaintiff seeking a preliminary injunction must offer proof beyond unverified allegations in the pleadings."). "As support for a preliminary injunction the court can consider only facts presented by affidavit or testimony and cannot consider facts provable under the modern liberal interpretation of the complaint but which have not been proved." *Societe Comptoir De L'Industrie Cotonniere, Etablissements Boussac v. Alexander's Dept. Stores, Inc.*, 190 F. Supp. 594, 601 (S.D. N.Y. 1961), aff'd 299 F.2d 33 (2d Cir. 1962) . "For purposes of a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure, unverified allegations are not sufficient, standing alone, to support relief." *Louisiana v. Centers for Disease Control & Prevention*, 603 F. Supp. 3d 406, 420 (W.D. La. 2022).

### III. ARGUMENT AND AUTHORITIES

DRMS's Complaint lacks any verification or affidavit supporting its factual allegations, and, for this reason alone, there are no facts upon which this Court can grant relief. Even if this Court accepts the unverified allegations in its Complaint as true, DRMS has failed to state a claim for any type of relief against Palmer Home, and, therefore, DRMS's Complaint should be dismissed. Even as "the federally mandated and funded P & A system in Mississippi," its authority to access records, residents and facilities is limited. *J.H. v. Hinds County,* No. 3:11-cv-327-DPJ, 2011 WL 3047667 at *1-2 (S.D. Miss. Jul. 25, 2011) (allowing DRMS access to the Henley-Young

Juvenile Justice Center in Hinds County, which *conceded* it was under the jurisdiction of DRMS). In *J.H.*, DRMS had actually "presented evidence supporting a probable cause finding that Henley-Young **continues to house** a significant percentage of youths with mental illness." *Id.* at *4.[1] (emphasis added). Unlike in it did in the *J.H.* case*,* DRMS does not allege in its Complaint that Palmer Home "continues to house" minors with mental illness on its campus; nor does DRMS present any evidence supporting the few factual allegations that it makes in its Complaint.

As stated previously, DRMS's authority extends to protect and advocate the rights of statutorily defined *individuals* – those diagnosed with a *significant mental illness or emotional impairment or with developmental or other disabilities* – by *investigating incidents of abuse and neglect by facilities that treat those specified individuals.* But, here, the factual allegations in the Complaint fail to state a claim on behalf of any mentally ill or disabled individual invoking the authority or jurisdiction of DRMS under PAIMI, PADD , or PAIR over Palmer Home. The alleged hiring and firing of staff, instances of a resident becoming pregnant while a resident, a report of a suicide, and general allegations of potential verbal and emotional abuse are *all* undated events, involving unnamed individuals who may or may not even be residents at Palmer Home. Unlike the plaintiffs in Henley-Young, who supported the factual allegations of abuse and neglect of juvenile inmates with mental and emotional impairment with evidence, DRMS's general conclusory allegations are wholly unsupported by any verified facts or evidence, and, even if true, do not invoke its jurisdiction under PAIMI, PADD or PAIR over Palmer Home. *J.H.,* 2011 WL 3047667 at *4.

---

[1] In *J.H.*, the plaintiff was a juvenile inmate at Henley-Young, who filed a Section 1983 action on behalf of a putative class of other minor inmates. At the hearing on DRMS's Motion for Preliminary Injunction, "the parties announced substantial agreement on the terms of a preliminary injunction allowing reasonable access." 2011 WL 3047667 at *1. Also in this case, Hinds County conceded that Henley-Young was subject to the P & A statutes. *Id.* at *2. Palmer Home makes no such concession here.

## A. DRMS LACKS AUTHORITY UNDER PAIMI

DRMS suggests that it has authority under PAIMI to investigate allegations of abuse of minor residents with significant mental illness at Palmer Home. An "individual with mental illness" is a defined term under PAIMI, and means

> "(4) … an individual—
>> (A) *who has a significant mental illness or emotional impairment, as determined by a mental health professional qualified under the laws and regulations of the State*; and
>> (B)
>>> (i)
>>>> (I) *who is an inpatient or resident in a facility rendering care or treatment*, even if the whereabouts of such inpatient or resident are unknown;
>>>> (II) who is in the process of being admitted to a facility rendering care or treatment, including persons being transported to such a facility; or"; [2]
>>>> (III) who is involuntarily confined in a municipal detention facility for reasons other than serving a sentence resulting from conviction for a criminal offense; or
>>> (ii) who satisfies the requirements of subparagraph (A) and lives in a community setting, including their own home.

42 U.S.C. § 10802(4). Other pertinent language from PAIMI provides:

> (a) A system established in a State under section 10803 of this title to protect and advocate the rights of ***individuals*** *with mental illness* shall—
>> (1) have the authority to—
>>> (A) *investigate incidents of abuse and neglect of **individuals** with mental illness* if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred;
>>> (B) pursue administrative, legal, and other appropriate remedies to ensure the *protection of **individuals** with mental illness* who are receiving care or treatment in the State….
>> (3) *have access to facilities* in the State providing care or *treatment*;
>> (4) in accordance with section 10806 of this title, have *access to all records* of—
>>> (A) *any **individual*** who is a client of the system *if such individual*, or the legal guardian, conservator, or other legal representative of such individual, *has authorized the system to have such access*;
>>> (B) *any **individual*** (including an individual who has died or whose whereabouts are unknown)—
>>>> (i)

- 6 -

> who by reason of the mental or physical condition of such individual is unable to authorize the system to have such access;
>
> (ii)
> who does not have a legal guardian, conservator, or other legal representative, or for whom the legal guardian is the State; and
>
> (iii)
> *with respect to whom a complaint has been received by the system* or with respect to whom as a result of monitoring or other activities (either of which result from a complaint or other evidence) there is *probable cause to believe that such **individual** has been subject to abuse and neglect* ….

42 U.S.C. § 10805(a) (emphasis added).  Similar to PAIMI, the purpose of PADD and PAIR is to protect the "legal and human rights of *individuals*" with developmental or other disabilities.[2]  In fact, in its Complaint, DRMS admits that its authority under PAIMI is limited to "the protection of rights of *individuals with mental illness*," and that its authority under PADD is limited "to investigate incidents of abuse and neglect *against individuals with developmental disabilities* and pursue legal, administrative, and other remedies *on their behalf*," and that its authority under PAIR is to "protect the *rights of all other individuals with disabilities* who are not covered under the PADD and PAIMI Acts."  Dkt. 1 at ¶ 10 (emphasis added).

But DRMS's factual allegations, unsupported by affidavit, do not even allege that any individual with mental illness as defined by PAIMI (or developmental or other disabilities as defined by PADD or PAIR) is being subjected to abuse and neglect at Palmer Home.  DRMS alleged merely that it "received reports of potential abuse and neglect" at Palmer Home, that Palmer Home at some time in the past may have hired a convicted felon, that a former Palmer Home child became pregnant or committed suicide, and that Palmer Home terminated staff who reported these incidents.  Dkt. 1 at ¶¶ 20-21.  Thus, DRMS complains generally of Palmer Home's

---

[2] The purpose of a protection and advocacy system established under PADD, 42 U.S.C. § 15041, is "to protect the legal and human rights *of individuals with developmental disabilities*." Similarly, PAIR, 29 U.S.C. § 794e(a)(1), supports a system "to protect the legal and human rights of *individuals with disabilities*."

- 7 -

past operations, not that a specific individual *with significant mental illness or with disabilities is being abused* at Palmer Home.

"The statute, however, grants authority to investigate incidents of abuse of '*individuals*,' not general operations." *Disability Law Center v. Discovery Academy,* 2010 WL 55989 at *3 (D. Utah Jan. 5, 2010) (referring to PAIMI) (emphasis added). "***The focus of the statutory protection is upon the protection of individuals for whom there is either a complaint or a finding of probable cause to believe 'such individual' has been subjected to abuse. Nothing in the statute suggests a general investigative power absent reference to an identified individual***." *Id.* (emphasis added). "Further enforcing the requirements of the statute itself, the regulation requires that the probable cause finding be supported by facts pointing to the abuse of a specific individual…. The act does not vest the Center with authority to conduct broad based investigations of 'general operational misconduct.'" *Id.* at *4.

DRMS's complaint seeks to do that very thing. Even though DRMS acknowledges that its authority extends only to protect and advocate on behalf of *individuals* with significant mental illness and have access to records of those *individuals* with mental illness (or with developmental or other disabilities for that matter) (*see, e.g.,* Dkt. 1 at ¶¶ 10, 35, 44 and 54), DRMS states plainly that it filed its "Complaint **in its own name** to **redress injuries to itself** in fulfilling its mandate." Dkt. 1 at ¶ 8 (emphasis added). DRMS fails to provide any factual support to find probable cause that any individual resident at Palmer Home has been diagnosed with a significant mental illness or is developmentally or otherwise disabled *and is being subjected to abuse*. Instead, DRMS seeks without authority "to conduct broad based investigations of 'general operational misconduct'" by Palmer Home. *See Disability Law Center,* 2010 WL 55989 at *4. But neither PAIMI, PADD nor

PAIR grant DRMS general investigative power to investigate Palmer Home "absent reference to an identified individual." *Id.*

In the *Disability Law Center* case, the "managing attorney fail[ed] to provide any factual support for what the allegations were, who made the allegations, what the substance of the complaint was or the name of the supposed victims of the abuse. Further, the Center failed to provide evidence that it in fact made a finding that there was probable cause to believe incidents of abuse or neglect were occurring, that it communicated to the Academy any factual basis for such a finding, or indeed, that it made such a finding at all." Similarly, DRMS acts as if it is "the sole arbiter of whether probable cause exists." *Id.* at \*5. "To accept [their] argument would require the court to interpret the law as allowing an advocacy center to determine, without any checks or balances of its demand, when it may conduct what is effectively a search and seizure of the defendants' records and information." *Id.* at \*6. "Indeed, the Center's attempt to expand the scope of the investigation to general operational misconduct without identifying the individuals about whom it is concerned **or even a factual basis to believe incidents of abuse and neglect are occurring** exceeds the carefully crafted limitations imposed in the PAIMI and thus exceeds the authority granted to the Center by the statute." *Id.* (emphasis added). For these reasons, the Court granted the Center's motion for summary judgment and dismissed the Complaint filed against the Discovery Academy. *Id.* The same result in warranted here.

As in the *Disability Law Center* case, DRMS attempts to exceed its scope of authority without identifying a specific individual with a significant mental illness (or a developmental or other disability) that is being subject to abuse at Palmer Home. Accordingly, the Court should dismiss DRMS's complaint.

**B. DRMS LACKS AUTHORITY UNDER PADD AND PAIR**

DRMS alleges in separate paragraphs of its Complaint that based on "information and belief, a number of youths who reside at Palmer Home have … developmental disabilities, and/or other physical or mental impairments that substantially limit one or more life activities" and that it "received reports indicating abuse and neglect."  Dkt. 1 at ¶¶ 16, 20.[3]  DRMS also suggests in its Complaint that the MSDH "confirmed that children with disabilities had been observed" at Palmer Home, but it failed to verify or provide any supporting documentation from the MSDH.  Dkt. 1 at ¶ 28.  Regardless, DRMS never connects the dots.  DRMS does not allege in its Complaint that a *specific resident* with developmental or other disabilities *is being abused* at Palmer Home invoking its jurisdiction or authority under PADD or PAIR over Palmer Home

The only support DRMS cites in its allegations is a self-serving email that claims nothing more than that MSDH confirmed that "children with disabilities *had been observed"* at Palmer Home.  Dkt. 1 at ¶ 28; Complaint Exhibit F [1-6] (emphasis added).  DRMS claimed months ago on April 9, 2024, that it would have supporting documentation from MSDH "this week," but its Complaint lacks any public records or other verification from MSDH that Palmer Home serves

---

[3] Developmental disabilities is defined in 42 U.S.C. § 15002(8) as "a severe, chronic disability of an individual that – (i) is attributable to a mental or physical impairment or combination of mental and physical impairments;
(ii) is manifested before the individual attains age 22;
(iii) is likely to continue indefinitely;
(iv) results in substantial functional limitations in 3 or more of the following areas of major life activity:
    (I)Self-care.
    (II)Receptive and expressive language.
    (III)Learning.
    (IV)Mobility.
    (V)Self-direction.
    (VI)Capacity for independent living.
    (VII)Economic self-sufficiency; and
(v) reflects the individual's need for a combination and sequence of special, interdisciplinary, or generic services, individualized supports, or other forms of assistance that are of lifelong or extended duration and are individually planned and coordinated."  DRMS simply does not allege that an individual residing at Palmer Home meets this statutory definition.

"children with disabilities."[4] As this Court has stated, DRMS's conclusory allegations are not entitled to the assumption of truth. *See Walker*, 2012 WL 1431422 at \*1.

As a child residential home, which "receives children who are not related to the operators and whose parents or guardians are not residents of the same facility for supervision, care, lodging and maintenance for 24 hours a day, with or without transfer of custody," Palmer Home is regulated and inspected on a regular basis by the MSDH. Miss. Code Ann. § 43-16-3(b). If disabled minor residents were residing at Palmer Home, the MSDH would be in a position to confirm the status of its residents; thus, DRMS's failure to attach any MSDH records or reports suggests that such records confirming disabled residents at Palmer Home do not exist. Even had DRMS attached such proof from the MSDH that a disabled child was *observed* on Palmer Home's campus, DRMS is still lacking any facts that *this disabled individual is being abused and neglected at Palmer Home.* DRMS's Complaint simply fails to state a sufficient factual basis warranting the relief it requests.

### IV. DRMS'S DEFICIENT COMPLAINT ALSO FAILS TO SHOW ENTITLEMENT TO ANY INJUNCTIVE RELIEF

Because DRMS's unverified Complaint fails to state a claim against Palmer Home, its request for a preliminary and permanent injunction also fails. The elements necessary to obtain a preliminary injunction are: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the relief is not granted; (3) that granting injunctive relief will not result in even greater harm to the other party; and (4) that granting relief will be in the public interest. *United Offshore Co. v. Southern Deepwater Pipel*ine, 899 F.2d 405, 407-08 (5th Cir. 1990). Similarly, the elements necessary to obtain a permanent injunction are that a plaintiff must

---

[4] Not only that, if DRMS's allegations of abuse were based in fact at all, DRMS could file a report with the MSDH or Mississippi Department of Child Protection Services, both with jurisdiction over such allegations of abuse.

demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *Merrit Hawkins & Associates, L.L.C. v. Gresham*, 861 F.3d 143 (5th Cir. 2017).

DRMS failed to support its request for injunctive relief with any proof. Conclusory statements like those in DRMS's Complaint are not enough to show irreparable harm. "To prevail in a showing of irreparable harm, a movant must demonstrate to the Court that another party will cause the movant specific, future injury unless the Court grants the movant's motion…." *Pace v. Mayorkas,* No. 2:21-cv-050-Z, 2021 WL 2678362, at *3 (N.D. Tex. Mar. 25, 2021) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 107 (1983)). "Speculative injury is not enough; there must be more than an unfounded fear on the part of the party moving" for injunctive relief. *Id.* "Here, the Plaintiff's general and conclusory statements are simply not sufficient to show that it will suffer immediate and irreparable injury…." *See Evans v. Select January Six Committee*, 2022 WL 17724137, at *4 (E.D. Tex. Dec. 15, 2022) (denying TRO where Plaintiff counsel's declaration is devoid of specific facts or attached evidence supporting "the very limited, vague, conclusory, and speculative allegations made in their motion.").

DRMS has made no showing of irreparable harm, of a substantial likelihood of success on the merits, that Palmer Home will not be subject to greater harm, and that the granting of injunctive relief is in the public interest, thus wholly failing to meet the requirements entitling it to injunctive relief. Not only that, but its "facts" are not presented by affidavit or testimony and, therefore, should be not considered. With only unverified allegations in its Complaint, DRMS is not entitled to any injunctive relief. Even if this Court accepts DRMS's factual allegations as true, DRMS still

fails to state a plausible claim for relief; therefore, its claims for preliminary and injunctive relief must be dismissed.

## V. CONCLUSION

The "unverified facts" as alleged in DRMS's Complaint fail to establish a reasonable factual basis to support DRMS's allegations that it has jurisdiction over Palmer Home or that Palmer Home has violated PAIMI, PADD or PAIR; therefore, DRMS's Complaint should be dismissed. Even if this Court accepts those unverified facts as true, DRMS has failed to plead sufficient facts to state a claim to relief that is plausible on its face.

WHEREFORE, Defendant, Palmer Home for Children moves the Court to dismiss the claims against it in the Complaint for Declaratory and Injunctive Relief for failure to state a claim upon which relief can be granted.

Respectfully submitted,

*s/Amanda J. Tollison*
Amanda J. Tollison (MB # 10313)
BUTLER SNOW LLP
1200 Jefferson Avenue, Suite 205
P.O. Box 1138
Oxford, MS 38655
P: (662) 513-8000
F: (662) 513-8001
amanda.tollison@butlersnow.com

OF COUNSEL:

J. Dillon Pitts (MB # 106399)
BUTLER SNOW LLP
1020 Highland Colony Parkway, Ste. 1400
Ridgeland, Mississippi 39157
P: (601) 948-5711
F: (601) 985-4500
dillon.pitts@butlersnow.com

*Attorneys for Palmer Home for Children*

- 14 -

## CERTIFICATE OF SERVICE

I hereby certify that I have this day filed the foregoing via the Court's ECF system, which will deliver copies to all counsel of record.

This the _____ day of July, 2024.

_s/Amanda J. Tollison_____
Amanda J. Tollison

- 14 -