IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**DISABILITY RIGHTS MISSISSIPPI**                                        **PLAINTIFF**

v.                                                  CIVIL ACTION NO. 1:24-cv-99-SA-DAS

**PALMER HOME FOR CHILDREN**                                    **DEFENDANT**

## ORDER AND MEMORANDUM OPINION

On May 28, 2024, Disability Rights Mississippi ("DRMS") initiated this civil action by filing its Complaint [1] for Declaratory and Injunctive Relief against Palmer Home for Children ("Palmer Home"). The Complaint [1] seeks a declaratory judgment as well as a preliminary and permanent injunction directing Palmer Home to grant DRMS access to its facility in Desoto County, Mississippi pursuant to certain federal statutes. Before the Court is DRMS' Motion for Preliminary Injunction [6] and Palmer Home's Motion to Dismiss [8]. The Motions [6, 8] have been fully briefed and are ripe for review. The Court is prepared to rule.

*Relevant Background*

DRMS is a non-profit corporation designated by the Governor as the protection and advocacy system for Mississippi citizens with disabilities. DRMS is federally mandated and authorized pursuant to a trio of federal statutes to monitor facilities housing disabled persons.[1] Palmer Home operates a residential foster care facility for children that is located in Lake Cormorant, Desoto County, Mississippi and regulated by the Mississippi Department of Health ("MSDH"). In its Complaint [1], DRMS alleges that, upon information and belief, Palmer Home

---

[1] *See* Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI"), as amended, 42 U.S.C. § 10801 *et seq.*; the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("PADD"), as amended, 42 U.S.C. § 15041 *et seq.*; and the Protection and Advocacy of Individual Rights Act ("PAIR"), as amended, 29 U.S.C. § 794e (collectively referred to as the "P&A statutes").

houses youths with disabilities, including mental, developmental, and/or physical impairments, who receive treatment and services related to those disabilities while in Palmer Home's care.

According to the Complaint [1], DRMS received reports in late 2023 indicating potential abuse and neglect of residents at Palmer Home's Desoto County facility. Specifically, DRMS alleges that the complaint it received "outlined several serious concerns from former staff and residents, including the hiring of a convicted felon as a campus director, instances of residents becoming pregnant while in care, allegations of verbal and emotional abuse, reports of suicide, and the termination of staff members who attempted to report these incidents." [1] at p. 4.

Resultantly, DRMS contacted Palmer Home, through counsel, to request and arrange a monitoring visit at Palmer Home. Palmer Home initially agreed to schedule a monitoring visit and proposed dates for the visit to take place in March 2024. However, Palmer Home later denied DRMS' request when DRMS attempted to confirm the visit date. As a basis for its denial, Palmer Home alleges that it does not meet the definition of a "facility" under the P&A statutes and is therefore not subject to DRMS' investigative authority.

DRMS then filed the instant suit seeking declaratory and injunctive relief against Palmer Home for its alleged violation of the P&A statutes in denying DRMS unaccompanied access to its Desoto County facility and its youth residents. DRMS has moved the Court for issuance of a preliminary injunction and Palmer Home has moved for dismissal of the Complaint [1]. Both Motions [6, 8] are opposed. The Court will address them in turn.

I.      *Palmer Home's Motion to Dismiss [8]*

From the outset, Palmer Home argues that the facts alleged in the Complaint [1], upon which DRMS bases its authority and jurisdiction to monitor Palmer Home, are unverified and should not be accepted as true. In its supporting Memorandum [9], Palmer Home cites non-binding

case law regarding the evidentiary standard for obtaining preliminary injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure. Palmer Home primarily argues for dismissal of the Complaint [1] under that standard. While DRMS has requested a preliminary injunction by separate Motion [6], it is not the only relief it seeks in its Complaint [1]. Therefore, the Court finds Palmer Home's argument misplaced and will address it in the appropriate section of this opinion.

### A. Dismissal Standard

Rule 12(b)(6) allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, 129 S. Ct. 1937.

A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F. 3d 228, 232–33 (5th Cir. 2009). But a court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678–79, 129 S. Ct. 1937. A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true. *Id.*, 129 S. Ct. 1937. It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. In other words, "[t]his standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th

Cir. 2009) (citing *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008)). If there are insufficient factual allegations to raise a right to relief above the speculative level, the claim must be dismissed. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955.

> B. *DRMS' Authority as Mississippi's Designated Advocacy Organization*

A brief overview of the P&A statutes is warranted before turning to the parties' arguments.

PAIMI was enacted "to 1) ensure that the rights of individuals with mental illness are protected and 2) help states establish and operate a protection and advocacy system for individuals with mental illness." *Disability Rights Texas v. Pacillas*, 690 F. Supp. 3d 654, 659 (W.D. Tex. 2023) (quoting 42 U.S.C. § 10801(b)) (internal quotations omitted). Under PAIMI, the designated protection and advocacy system has the authority to investigate incidents of abuse involving persons with mental illness. 42 U.S.C. § 10805(a)(1). PAIMI provides in pertinent part:

> (a) A system established in a State under section 10803 of this title to protect and advocate the rights of individuals with mental illness shall—
>
> > (1) have the authority to—
> >
> > > (A) investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred;
> > >
> > > (B) pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness who are receiving care or treatment in the State.

*Id*. at § 10805(a)(1)(A)-(B).

PAIMI additionally grants the protection and advocacy system the authority to access facilities providing care or treatment to persons with mental illness. *Id*. at § 10805(a)(3). Protection

4

and advocacy systems are also entitled to access records when certain criteria are met. *Id*. at § 10805(a)(4).

PADD provides similar authority for the purposes of protecting the rights of persons with developmental disabilities (as opposed to PAIMI, which applies to the rights of mentally ill persons). 42 U.S.C. § 15043(a)(1)-(2). This authority includes access at reasonable times to any person with a developmental disability "in a location in which services, supports, and [provides] other assistance…to such an individual." *Id*. at § 15043(a)(2)(H). PADD also authorizes access to records under similar criteria as PAIMI. *Id*. at § 15043(a)(2)(I).

PAIR "creates an identical framework with respect to the rights of individuals with disabilities" and applies to persons with disabilities not covered by PAIMI or PADD. *State of Conn. Office of Prot. & Advocacy for Persons with Disabilities v. Hartford Bd. of Educ.*, 355 F. Supp. 2d 649, 654 (D. Conn. 2005) (citing 29 U.S.C. § 794e(a)(1)(B)). "Thus, while PAIR applies to a broader segment of the population of individuals with disabilities, it allows protection and advocacy systems the same breadth of investigative and advocacy authority allowed under [PADD]." *Id*.

In summary, each of the three federal P&A statutes supplies state protection and advocacy systems or agencies with broad investigatory authority, including access to certain records. *See* 42 U.S.C. §§ 15043(a)(2)(H)-(I); 10805(a); 29 U.S.C. § 794e(f)(2). The statutes specifically authorize P&A systems, such as DRMS, to investigate incidents of abuse or neglect involving persons with mental illness or disabilities when the system receives complaints or determines that there is probable cause—that is, reasonable grounds to believe that an individual has been, or may be, subject to abuse or neglect. *See* 42 U.S.C. §§ 15043(a)(2)(B); 10805(a)(1)(A); 29 U.S.C. § 794e(f)(2); 45 C.F.R. §§ 1326.19; 51.2; *see also J.H. ex rel. Gray v. Hinds Cnty., Miss.*, 2011 WL

5

3047667, at *1 (S.D. Miss. July 25, 2011) (recognizing DRMS as the federally mandated and funded P&A system in Mississippi).[2]

### C. Complaints Received by DRMS

Palmer Home first maintains that the factual allegations in the Complaint [1] fail to state a claim "on behalf of any mentally ill or disabled individual invoking the authority or jurisdiction of DRMS under PAIMI, PADD, or PAIR." [9] at p. 5. In other words, it argues that DRMS does not have general investigative power under the P&A statutes to investigate Palmer Home "absent reference to an identified individual" with a qualifying disability that is being subject to abuse. [9] at p. 9. DRMS makes clear that it brings this action "in its own name to redress injuries to itself in fulfilling its mandate to protect and advocate for the rights of people with disabilities." [1] at p. 2.

In its Memorandum [9], Palmer Home emphasizes the term "individuals" from the P&A statutes and heavily relies on the District Court of Utah's decision in *Disability Law Center v. Discovery Academy*, 2010 WL 55989 (D. Utah Jan. 5, 2010) to support its position. In *Disability Law Center*, the plaintiff sought injunctive and declaratory relief allowing it access to the defendant's facility—a clinical and therapeutic boarding school. *Id*. at *1. In that case, the plaintiff, acting as the P&A system for the State of Utah, was allowed access by the defendant boarding school to conduct an investigation after it received a complaint involving a specific resident. *Id*. The boarding school limited the plaintiff's access to interviewing the subject individual and his records, and when that person was no longer housed by the defendant, the plaintiff sought access

---

[2] The relevant regulation under PADD provides that probable cause also includes reasonable grounds for belief "that the health or safety of the individual is in serious and immediate jeopardy." 45 C.F.R. § 1326.19. The probable cause standard under PAIMI is slightly more rigorous. Under PAIMI, the relevant regulation defines probable cause as: "reasonable grounds for belief that an individual with mental illness has been, or may be at significant risk of being subject to abuse or neglect." 42 C.F.R. § 51.2. Both definitions provide that a determination of probable cause may be based on reasonable inferences drawn from experience or training "regarding similar incidents, conditions or problems that are usually associated with abuse or neglect." *Id*.

6

to other residents and their records under PAIMI. *Id*. On summary judgment, the court denied the plaintiff's requested relief in part on the following basis:

> The focus of the statutory protection is upon the protection of individuals for whom there is either a complaint or a finding of probable cause to believe "such individual" has been subjected to abuse. Nothing in the statute suggests a general investigative power absent reference to an identified individual. The limitations in the statute and the regulations implementing it are necessary to avoid warrantless searches that are otherwise prohibited by the Fourth Amendment.

*Id*. at *3.

Notably, the district court cited no authority to support this narrow interpretation. Instead, the court's interpretation focused solely on 42 U.S.C. 10805(a)(4)(B), which relates to access to records under PAIMI, and is merely one small portion of the statute. *Id*.[3] Additionally, though not specifically addressed, certain constitutional challenges appear to have been a consideration in the court's interpretation.[4]

Ultimately, the court dismissed the plaintiff's complaint for failure to provide summary judgment evidence supporting its probable cause determination as to any other specific individual aside from the person subject of the original complaint. *Id*. at *5.

---

[3] Specifically, 42 U.S.C. 10805(a)(4)(B) provides that a P&A system shall "have access to records of … any individual (including an individual who has died or whose whereabouts are unknown) who by reason of the mental or physical condition of such individual is unable to authorize the system to have such access; who does not have a legal guardian, conservator, or other legal representative, or for whom the legal guardian is the State; *and* with respect to whom a complaint has been received by the system or with respect to whom as a result of monitoring or other activities (either of which result from a complaint or other evidence) there is probable cause to believe that such individual has been subject to abuse or neglect." (emphasis added).

[4] *See id*. at *1 ("Because of this finding it is unnecessary to reach the constitutional challenges raised by the Academy"). However, the court goes on to explain its view of constitutional limitations imposed by the P&A statutes as related to search and seizures under the Fourth Amendment as referenced above. *See also Id*. at *6. No such constitutional challenge is at issue here.

The Court also notes the Second Circuit's interpretation of the term "individuals" in the P&A statutes. *See Conn. Office of Prot. & Advocacy For Persons With Disabilities v. Hartford Bd. of Educ.*, 464 F. 3d 229 (2d Cir. 2006). In *Hartford*, the Second Circuit affirmed a district court's grant of a preliminary injunction allowing the plaintiff protection and advocacy system access to information of *all* students housed by the defendant—a public school providing therapeutic education for emotionally disturbed children. *Id*. at 246. In that case, the plaintiff had received complaints about the operation of the defendant's policies that led to the inappropriate restraint and seclusion of residents. *Id*. at 245. The court explained that, although the plaintiff had not received a specific complaint about each student, given that the allegations were "system-wide," the plaintiff "could have reason to believe that all students at the school had been, were being, or were at risk of being neglected or abused." *Id*. Articulating why the district court's preliminary injunction was not overly broad, the Second Circuit explained that:

> [A]lthough the P&A Acts speak in terms of the "individual" or "an individual," nothing in the statute suggests that [plaintiff] cannot seek authorization for a number of individuals if it has made a probable cause determination that multiple individuals have been subjected to abuse or neglect at a facility. As HHS has noted, "neither the Act nor case law imposes an individual-specific probable cause requirement," and a probable cause determination could be made on the basis of "general conditions or problems that affect many or all individuals in a facility."

*Id*. at 245-46 (citing Substance Abuse and Mental Health Services Administration; Requirements Applicable to Protection and Advocacy of Individuals with Mental Illness; Final Rule, 62 Fed. Reg. 53,548, 53,559 (Oct. 15, 1997) (codified as amended at 42 C.F.R. § 51)) (additional citations omitted).

*Hartford* is not an outlier case in this regard, as the District Court for the Southern District of Ohio has relatively recently reached the same conclusion. *See Disability Rights Ohio v. Buckeye*

*Ranch, Inc.*, 375 F. Supp. 3d 873, 890 (S.D. Ohio 2019) (recognizing that a probable cause determination under the P&A statutes can be made where there is a "systematic problem").

In its Complaint [1], DRMS—similar to the plaintiff in *Hartford*—alleges that it received reports of potential abuse and neglect of youth residents in the care of Palmer Home including "the hiring of a convicted felon as a campus director, instances of residents becoming pregnant while in care, allegations of verbal and emotional abuse, reports of suicide, and the termination of staff members who attempted to report these incidents." [1] at p. 4.[5] Like in *Hartford*, these allegations would likely impact most, if not all, of Palmer Home's residents. This Court finds persuasive the Second Circuit's interpretation of the P&A statutes—specifically, that nothing in the statutes imposes an individual-specific probable cause requirement.

Here, DRMS alleges having probable cause to believe *systematic* abuse and neglect is occurring at Palmer Home based on the complaints it received.[6] The allegations outlined in the

---

[5] PAIMI defines "abuse" as "any act or failure to act by an employee of a facility rendering care or treatment which was performed, or which was failed to be performed, knowingly, recklessly, or intentionally, and which caused, or *may have* caused, injury or death to a[n] individual with mental illness." 42 U.S.C.A. § 10802(1) (emphasis added). Further, 42 C.F.R. § 51.2 adds to this definition of abuse by including "verbal, nonverbal, mental and emotional harassment; and any other practice which is likely to cause immediate physical or psychological harm or result in long-term harm if such practices continue."
PAIMI defines "neglect" as "a negligent act or omission by any individual responsible for providing services in a facility rendering care or treatment which caused or *may have* caused injury or death to a[n] individual with mental illness or which placed a[n] individual with mental illness at risk of injury or death, and includes an act or omission such as the failure to establish or carry out an appropriate individual program plan or treatment plan for a[n] individual with mental illness, the failure to provide adequate nutrition, clothing, or health care to a[n] individual with mental illness, or *the failure to provide a safe environment* for a[n] individual with mental illness, including the failure to maintain adequate numbers of appropriately trained staff." 42 U.S.C.A. § 10802(5) (emphasis added).
The relevant regulation under PADD provides similar definitions for abuse and neglect. *See* 45 C.F.R. § 1326.19. Notably, 45 C.F.R. § 1326.19 includes the following definition of abuse: "In addition, the P&A may determine, in its discretion that a violation of an individual's legal rights amounts to abuse."
[6] As to Palmer Home's argument that the allegations set forth in the complaints received by DRMS are "all undated events, involving unnamed individuals who may or may not even be residents of Palmer Home," it is noteworthy that federal regulations under PAIMI provide a description for "complaints" which does not particularly require this information. [9] at p. 5. A complaint "includes, but is not limited to *any* report or communication, whether formal or informal, written or oral, received by the P&A system, including

complaints sufficiently fit the definitions of abuse and neglect under the P&A statutes for purposes of stating a claim.

In reaching this conclusion, the Court necessarily rejects the District Court of Utah's interpretation of the statute in *Disability Law Center*. As noted above, that court cited no specific authority to support its interpretation, and this Court finds that the plain language of the statute mandates a different result. *See Barr v. Sec. & Exch. Comm'n*, 114 F. 4th 441, 452 (5th Cir. 2024) (citing *Asadi v. G.E. Energy (USA), L.L.C.*, 720 F. 3d 620, 622 (5th Cir. 2013)).[7]

Therefore, to the extent mentally ill or disabled children reside at Palmer Home, accepting these factual allegations as true for purposes of the Motion to Dismiss [8], they are sufficient to trigger DRMS' investigative authority under the P&A statutes. Thus, the more narrow issue is whether Palmer Home is a "facility" subject to DRMS authority under these statutes.

### D. Facilities Subject to PAIMI

As noted, PAIMI grants DRMS access to facilities providing *care or treatment* to persons with mental illness. 42 U.S.C. § 10805(a)(3).[8] Palmer Home argues that DRMS has failed to establish that Palmer Home is a "facility" as defined by PAIMI. [19] at p. 8.

PAIMI provides that "[t]he term 'facilities' may include, *but need not be limited to*, hospitals, nursing homes, community facilities for individuals with mental illness, board and care

---

media accounts, newspaper articles, telephone calls (including anonymous calls) from *any* source alleging abuse or neglect of an individual with mental illness." 42 C.F.R. § 51.2.

[7] The Court also finds noteworthy the difference in the procedural posture of *Disability Law Center* (summary judgment) and this case (motion to dismiss).

[8] PAIMI defines "individual with mental illness" as "an individual (A) who has a significant mental illness or emotional impairment, as determined by a mental health professional qualified under the laws and regulations of the State; and (B) who is an inpatient or resident in a facility rendering *care or treatment*, even if the whereabouts of such inpatient or resident are unknown; who is in the process of being admitted to a facility rendering care or treatment, including persons being transported to such a facility; or who is involuntarily confined in a municipal detention facility for reasons other than serving a sentence resulting from conviction for a criminal offense or who satisfies the requirements of subparagraph (A) and lives in a community setting, including their own home." 42 U.S.C.A. § 10802(4)(A)-(B).

10

homes, homeless shelters and jails and prisons." 42 U.S.C.A. § 10802(3) (emphasis added). Regulations promulgated under PAIMI provide additional guidance with respect to the facilities covered under the statute. In particular, a facility further "includes any public or private residential setting that provides overnight care accompanied by treatment services." 42 C.F.R. § 51.2. Additionally, "care or treatment" is defined as "services provided to prevent, identify, reduce or stabilize mental illness or emotional impairment such as mental health screening, evaluation, counseling, biomedical, behavioral and psychotherapies, supportive or other adjunctive therapies, medication supervision, special education and rehabilitation, even if only 'as needed' or under a contractual arrangement." *Id*.

  In its Complaint [1], DRMS makes the following allegations:

> Upon information and belief, a number of youths who reside at Palmer Home have mental illness, developmental disabilities, and/or other physical or mental impairments that substantially limit one or more major life activities.
>
> Upon information and belief, youths who reside at Palmer Home receive care, treatment, services, supports, and [re]habilitiation including, but not limited to: screening, evaluation, counseling, behavioral therapies, medication treatment, and supervision, assistive devices, and special education services.

[1] at p. 4.

  Palmer Home argues that these are merely conclusory allegations not entitled to the assumption of truth.

  Here, it is undisputed that Palmer Home provides foster care for children and is regulated by MDHS. PAIMI does not expressly list foster care homes as one of the designated facilities within its reach; however, the statute is clear that the list provided is non-exhaustive. *See* 42 U.S.C.A. § 10802(3).

In *Michigan Protection & Advocacy Service, Inc. v. Miller*, the District Court for the Western District of Michigan held that PAIMI[9] applied to youth training schools, detention centers and foster care homes operated by the Michigan Department of Social Services. 849 F. Supp. 1202, 1210 (W.D. Mich. 1994). The defendant in *Miller* first argued that the plaintiff had failed to establish that youth in defendant's system had recently been determined by a mental health professional to be mentally ill or emotionally impaired. *Id*. at 1207. As to this argument, the court found that the plaintiff had provided substantial evidence that defendant had housed minors with mental illness (as determined by mental health professionals) in the past, as well as recent evidence that some current residents *may be* mentally ill. *Id*. (emphasis added).[10]

Second, the defendant argued that its facilities, which focused on education and rehabilitation of residents, did not qualify as "facilities" under PAIMI because PAIMI applied only to facilities whose primary purpose was the care and treatment of mentally ill persons. *Id*.[11] The court disagreed, reasoning that the statutory definition of facilities was not as limited as the defendant suggested because it contemplates the inclusion of homeless shelters and jails—facilities whose main purposes are not the treatment of mental illness. *Id*.

Ultimately, the court granted summary judgment in favor of the plaintiff finding the defendant in violation of PAIMI. While *Miller* did not involve a private residential foster care home, this Court finds it notable that the defendant Michigan Department of Social Services—a state agency also operating foster homes and with similar functions as MSDH—was found to be

---

[9] *Miller* references the acronym "PAMII." PAIMI is formerly known as the Protection and Advocacy for Mentally Ill Individuals Act ("PAMII").

[10] Specifically, the *Miller* plaintiff pointed to reports and studies prepared by mental health professionals at the University of Michigan relative to evaluations of minors in defendant's facilities as well as reports prepared by defendant which confirmed that it targeted populations suffering from emotional impairments or developmental disabilities. *Id*. at 1204.

[11] Special education and rehabilitation are now included in the definition of "care or treatment" under PAIMI. *See* 42 C.F.R. § 51.2.

subject to PAIMI. As noted, PAIMI applies to "any public or private residential setting that provides overnight care accompanied by treatment services." 42 C.F.R. § 51.2.

Next, like the defendant in *Miller*, Palmer Home argues that DRMS fails to identify a resident at Palmer Home who is mentally ill or developmentally disabled as described by the P&A statutes. In its Response Memorandum [17], DRMS argues that it is not required to make a threshold showing of mental illness to exercise its authority under PAIMI.

As to this argument, the United States District Court for the Southern District of Mississippi considered a similar issue in *J.H. ex rel. Gray v. Hinds Cnty., Miss.*, 2011 WL 3047667 (S.D. Miss. July 25, 2011), a Section 1983 case that DRMS initiated against Hinds County, Mississippi. In that case, the parties disputed whether DRMS had authority as part of its monitoring function to interview imprisoned children at Henley-Young Juvenile Justice Center who were not known to have a mental illness in order to determine whether any of them had mental illnesses that may trigger protection under the PAIMI. *Id*. at *1. The court rejected the defendant's argument that a P&A system must establish mental illness before its authority is triggered. *Id*. at *4 (citing *Miller*, 849 F. Supp. 1207). In rejecting this argument, the court explained that "'conclusive evidence that a particular person or persons qualifies as an individual with mental illness or [is] developmentally disabled for purposes of protection' is not required." *Id.* (citing *State of Conn. Office of Prot. & Advocacy for Persons with Disabilities,* 355 F. Supp. 2d at 655). The court instead held that DRMS had provided "substantial evidence" that Henley-Young continued to house children with mental illness by pointing to statistical data—specifically, an article titled "Prevalence of Mental Illness and Substance Abuse Disorders Among Incarcerated Juvenile Offenders." *Id*. (also citing *Prot. & Advocacy For Persons With Disabilities v. Armstrong*, 266 F. Supp. 2d 303, 314 (D. Conn. 2003) (holding that studies regarding inmate populations were sufficient evidence)).

13

Palmer Home distinguishes *Gray* by stating that DRMS' allegations are unsupported, "[u]nlike the plaintiffs jailed in Henley-Young, who supported the factual allegations with evidence of mental and emotional impairment." However, as in *Gray*, DRMS points to a similar article from 2022 which discusses that foster care children have higher rates of mental health disorders due to their experiences in the system.[12] Recent statistical data confirming the prevalence of mental illness among children in foster care certainly supports the probability that current residents of Palmer Home *may be* mentally ill.

Notwithstanding its finding that Henley-Young housed mentally ill children, the court in *Gray* explained that the denial of access to residents for purposes of determining whether other cases of mental illness existed was inconsistent with the purposes of PAIMI. *Id*. at *5. (citing *Miller*, 849 F. Supp. at 1207) (finding defendant's policy of denying P&A system access prevented the organization from bringing in their own mental health professionals to ascertain whether persons qualified for protection defeated the very purpose of PAIMI). Again, PAIMI authorizes DRMS to have access to facilities providing *care or treatment* to persons with mental illness. *See* 42 U.S.C. § 10805(a)(3) (emphasis added). The parties dispute whether care of mentally ill persons is sufficient or if treatment services must be provided in order to be considered a "facility."

DRMS emphasizes that the statute mentions "'care or treatment' not just treatment." *Id*. However, the relevant regulation under PAIMI describes "care or treatment" in the collective as "services provided…" 42 C.F.R. § 51.2. It also states that a facility includes a residential setting providing care "accompanied by treatment services." *Id*.

---

[12] In its Memorandum [7] supporting its Motion for Preliminary Injunction [6], DRMS additionally references an article by the American Academy of Pediatrics discussing a study from 2016 quantifying the number of children with certain developmental disabilities in the foster care system.

14

On this issue, Palmer Home argues that it does not provide care or treatment as defined by PAIMI. In response, DRMS argues that Palmer Home has conceded via its own website that it provides qualifying care or treatment under the P&A statutes by stating that it provides "restorative care for children in need of foster care, educational support, and more… superior care to children through four specialized services… healing and support, allowing children to grow and thrive…[and] holistic care to each child based on their unique physical, emotional, spiritual and educational needs." [17] at p. 9.

Overall, it is unclear to the Court whether the services generally described on Palmer Home's website could constitute "care or treatment" services described by PAIMI. However, *Miller* sheds light on the possibility that Palmer Home *could* be a "facility" under PAIMI. That is sufficient for purposes of this stage of the proceedings.

E.  Service providers under PADD and PAIR

As noted, DRMS alleges in the Complaint [1] that residents of Palmer Home include children with developmental disabilities or other physical or mental disabilities and is therefore subject to its authority under PADD and PAIR.

PADD allows P&A systems access at reasonable times to any person with a developmental disability "in a location in which services, supports, and other assistance are provided to such an individual[.]" 42 U.S.C. § 15043(a)(2)(H).[13] Relevant regulations promulgated under PADD authorize P&A systems "reasonable unaccompanied access to public and private service providers,

---

[13] Developmental disability is defined as "a severe, chronic disability of an individual that is attributable to a mental or physical impairment or combination of mental and physical impairments; is manifested before the individual attains age 22; is likely to continue indefinitely; results in substantial functional limitations in 3 or more of the following areas of major life activity: self-care, receptive and expressive language, learning, mobility, self-direction, capacity for independent living, economic self-sufficiency; and reflects the individual's need for a combination and sequence of special, interdisciplinary, or generic services, individualized supports, or other forms of assistance that are of lifelong or extended duration and are individually planned and coordinated." 42 U.S.C. § 15002(8).

programs in the State, and to all areas of the service provider's premises that are used by individuals with developmental disabilities or are accessible to them." 45 C.F.R. § 1326.27(b)(2). However, the regulation does not define "service providers." *See* 45 C.F.R. § 1326.19.

PAIR generally extends the same authorities under PADD to P&A systems and covers persons with disabilities not covered under PADD and PAIMI. *See* 29 U.S.C. § 794e(a)(1)-(f).

In its Complaint [1], DRMS additionally makes the following allegation:

> DRMS also informed counsel for the Defendant that, in connection with the investigation initiated, the agency had reached out to Mississippi Department of Health who confirmed that children with disabilities had been observed during their last facility [sic].

[1] at p. 6.

As to this contention, Palmer Home asserts that it is conclusory, arguing that DRMS fails to provide verification from MSDH that Palmer Home houses children with disabilities as alleged. Particularly, Palmer Home argues that "if disabled minor residents were residing at Palmer Home, then MSDH would be in a position to confirm the status of its residents" and that DRMS' failure to include records or reports from MDHS confirms "disabled residents at Palmer Home do not exist." [9] at p. 11.[14]

Palmer Home further argues that it is not a service provider under PADD and PAIR.[15] In response, DRMS incorporates the same authority and argument "[f]or all the foregoing reasons stated pursuant to PAIMI" addressed above. [17] at p. 13.[16] Based on the allegations in the

---

[14] Notably, this is the only portion of Palmer Home's briefing which appears to deny that any of the foster children in its care have disabilities as described under the P&A statutes. Nonetheless, it appears to be based on the lack of corroborating evidence from MDHS.

[15] That is, a service provider to persons with developmental or other disabilities.

[16] DRMS provides additional references to Palmer Home's website in this section of its Response Memorandum [17]. Specifically, it provides information about Palmer Home's "Whole Child Initiative" and "Back to School blog" on the website discussing their "model of care" and educational setting. *Id*. It remains unclear to the Court whether Palmer Home houses and/or provides services to developmentally or

Complaint [1], the Court is uncertain as to whether any children at Palmer Home have or could have developmental or other disabilities as no information is provided relative to when MDHS last visited Palmer Home. Nonetheless, for the same reasons articulated above in connection with PAIMI, the Court finds that, for purposes of this stage of the proceedings, the allegations of the Complaint [1] are sufficient.

In light of all of this, the Court finds that dismissal of the Complaint [1] is not appropriate. DRMS has alleged facts that, taken as true, provide a plausible claim for relief. The Motion to Dismiss [8] is therefore DENIED.

    II.       DRMS' Motion for Preliminary Injunction [6]

DRMS has requested a preliminary injunction granting it immediate unaccompanied access to Palmer Home and its residents, as well as access to resident records.

To obtain a preliminary injunction, DRMS carries the burden of establishing four elements: 1) a substantial likelihood of success on the merits, 2) a substantial threat of irreparable injury if the injunction is not granted, 3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and 4) that the grant of an injunction will not disserve the public interest. *PCI Transp., Inc. v. Fort Worth & W. R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005). "[A] preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements." *Id.* (quoting *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 196 (5th Cir. 2003)).

In the preceding sections, the Court addressed at length the issue as to whether or not Palmer Home is subject to DRMS authority under the P&A statutes. Considering those concerns

---

otherwise disabled children. Plaintiff may venture into the services provided by Palmer Home based on the information provided on their website during the limited discovery ordered herein.

and the lack of any evidentiary proof at this stage of the proceedings, the Court finds that a preliminary injunction would be premature at this time.

Rather, the Court finds it appropriate, though neither party requested it, for the parties to conduct limited discovery relevant to the issue of whether Palmer Home is a "facility" or "service provider" for purposes of the statutes. The parties are to conduct limited discovery within sixty (60) days of the date of this Order to clarify what services Palmer Home provides to its residents and the extent to which residents of Palmer Home have qualifying disabilities. The Magistrate Judge will convene a status conference in due course to set the parameters of that limited discovery.

At the conclusion of the discovery period, DRMS may, if appropriate, re-urge a request for preliminary injunctive relief. Palmer Home likewise may re-file a request for dismissal if appropriate.

*Conclusion*

For the reasons set forth above, the Motion to Dismiss [8] is DENIED. The Motion for Preliminary Injunction [6] is also DENIED. The Magistrate Judge will hold a conference and set all appropriate deadlines associated with the limited discovery ordered herein.

SO ORDERED, this the 17th day of December, 2024.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE