**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

DISABILITY RIGHTS MISSISSIPPI                                    PLAINTIFF

VS.                                              CIVIL ACTION NO. 1:24-CV-99-SA-DAS

PALMER HOME FOR CHILDREN                                         DEFENDANT


**MEMORANDUM BRIEF IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant Palmer Home for Children ("Palmer Home"), by and through

its counsel of record, and submits this Memorandum Brief in support of its Motion for Summary

Judgment pursuant to Federal Rule of Civil Procedure 56, and in support thereof would present

the following:

## I. INTRODUCTION

Disability Rights Mississippi ("DRMS") filed a Complaint for Declaratory and Injunctive

Relief [1] against Palmer Home, alleging that it has the authority under the Protection and

Advocacy statutes ("P&A statutes")[1] to conduct monitoring and investigations of Palmer Home's

staff, residents, records, and campus. DRMS followed its Complaint with a Motion for Preliminary

Injunction [6], seeking immediate unaccompanied access to Palmer Home and its residents, as well

as access to resident records. Shortly thereafter, Palmer Home filed a Motion to Dismiss [8] the

Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The parties fully briefed both

motions. After consideration of the motions and briefing, the Court ruled on the pending motions

in its December 17, 2024 Order [21], denying the Motion to Dismiss [8], finding DRMS's

---

[1] *See* Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI"), as amended, 42 U.S.C.§ 10801 *et seq.;* the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("PADD"), as amended, 42 U.S.C. § 15041 *et seq.;* and the Protection and Advocacy of Individual Rights Act ("PAIR"), as amended, 29 U.S.C. § 794e (collectively referred to as the "P&A statutes").

allegations sufficient to survive the Rule 12(b)(6) standard, and denying the Motion for Preliminary Injunction [6] as premature. The Court gave DRMS an opportunity "to conduct limited discovery relevant to the issue of whether Palmer Home is a 'facility' or 'service provider' for purposes of the [P&A] statutes" and "to clarify what services Palmer Home provides to its residents and the extent to which residents of Palmer Home have qualifying disabilities," in order to determine whether Palmer Home falls under DRMS's jurisdiction and authority. [21] at 18. The Court also invited the parties to re-urge their respective motions.

The limited discovery period has concluded, and Palmer Home files the instant motion, asking this Court to grant it summary judgment, finding that it is not a "facility" or "service provider" under the P&A statutes, rendering "treatment services" to mentally ill or developmentally or otherwise disabled children. Palmer Home's responses to DRMS's Interrogatories and Requests for Production, its supplementary responses to the limited discovery, and its Initial Disclosures establish that Palmer Home is not a "facility" or "service provider" for purposes of the P&A statutes and that Palmer Home does not provide treatment services to children with "significant mental illness or emotional impairment"[2] or a "severe, chronic disability" or any disability as defined by the P&A statutes;[3] therefore, "there is no genuine issue as to any material fact and ... [Palmer Home] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Lastly, all of DRMS's allegations against Palmer Home have been investigated by the Mississippi Department of Health ("MSDH") and were found to be unsubstantiated, so DRMS has failed to show probable cause of any abuse or neglect, and for that reason, summary judgment is appropriate.

---

[2] 42 U.S.C.A. § 10802(4)(A)-(B); *see also* Order and Memorandum Opinion [21] at 10 fn 8.
[3] 42 U.S.C. § 15002(8) ("PADD"); *see also* Order [21] at 15 fn 13; 29 U.S.C. § 794e(a); *see also* Order [21] at 16.

## II. FACTUAL BACKGROUND

In its Complaint, DRMS alleged that it received reports in late 2023 of potential abuse and neglect of residents at Palmer Home's campus. [1] at ¶20. The allegations in the Complaint and the assertion of jurisdiction were based on "several serious concerns from former staff and residents, including the hiring of a convicted felon as a campus director, instances of residents becoming pregnant while in care, allegations of verbal and emotional abuse, reports of suicide, and the termination of staff members who attempted to report these incidents." [1] at 4. Curiously absent from the allegations are any assertions that Palmer Home provides care or treatment services to significantly mentally ill or severely and chronically disabled children. DRMS's allegations that Palmer Home is a "facility as defined in 42 U.S.C. § 10802(3) and 42 C.F.R. § 51.2"[4] and "a service provider, as provided in 42 C.F.R. § 1326.27(c)"[5] were based on "information and belief." [1] at 4. Because DRMS's allegations about Palmer Home and the services it provides to its child residents were conclusory, the Court afforded DRMS the opportunity to conduct discovery to support its assertion of authority over Palmer Home.

The discovery confirms that Palmer Home is not a "facility" under PAIMI or a "service provider" under PADD or PAIR and does not provide treatment services for children diagnosed with mental illness or with developmental or other disabilities. Palmer Home's responses to DRMS's Interrogatories, the hundreds of pages of documents it produced in response to DRMS's Requests for Production of Documents, and the Initial Disclosures exchanged between the parties, including those provided by DRMS, establish the following undisputed facts that compel dismissal of this case.

---

[4] 42 U.S.C. § 10801 *et seq.* ("PAIMI").
[5] 42 U.S.C. § 15041 *et seq.* ("PADD").

### III. STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Palmer Home is a Child Residential Home licensed and regulated by the MSDH in compliance with Title 43 Chapter 16 of the Mississippi Code Annotated. *See* Exhibit A, Ex. F;[6] *see also* [1] at 4, ¶15.

2. Palmer Home is not licensed or regulated by the Mississippi Department of Child Protection Services ("MDCPS"). *See* Ex. D.

3. Palmer Home is not licensed or regulated by the Mississippi Department of Mental Health ("MDMH"). *See* Ex. E.

4. As a Child Residential Home, Palmer Home is a private, faith-based group home that strives to provide parental nurturing in a structured, family-like environment to children in need of care. *See* Ex. A, A-1 and A-5; *see also* Miss. Code Ann. § 43-16-3(b).

5. Palmer Home has six cottages on its campus, each of which provides a home for up to eight (8) children, who are cared for in a parental capacity by houseparents. *See* Ex. A, A-1; Ex. C.

6. Palmer Home averages fewer than thirty (30) children residing in its homes on campus in any given month. *See* Ex. A, A-8.

7. To apply for placement at Palmer Home, parents or legal guardians of children are required to fill out a Child Intake Application, which includes a Consent of Release of Information/Documents, and an Intake Screening Form. *See* Ex. A, A-3, A-4.

8. Based on the information provided in the Child Intake Application and the Intake Screening Form, as well as the information and documents released to Palmer Home regarding the child's education, psychological, psychiatric, medical, social and legal records, Palmer

---

[6] The exhibits referenced in this Memorandum are attached to Palmer Home's corresponding Motion for Summary Judgment.

Home staff determine if the application aligns with its admissions policy. *See* Ex. A, Ex. A-3, Ex. A-4, Ex. A-6, Ex. A-7.

9. Palmer Home denies placement for children who are specified under the "Special Populations and Considerations" in its Admissions and Discharge Policy as follows:

    a. medically fragile children and youth, or those with severe physical, developmental or intellectual needs, children and youth requiring 24 hour personal assistance;

    b. children and youths with certain behavioral or emotional diagnoses requiring specialized treatment and care such as but not limited to children:

        i. With a history of patterned violence or aggression toward others, sexual reactivity, or diagnosed Mental Illness or Severe Emotional Disturbances; or

        ii. With certain trauma experiences or disorders requiring specialized clinical treatment and care, such as but not limited to:

            1. Active Suicidal Ideation
            2. Substance Abuse Disorders
            3. History of pervasive sexual exploitation (child victims of sex trafficking)
            4. Eating Disorders

*See* Ex. A, A-6.

10. Palmer Home denies placement for children who have a "significant mental illness or emotional impairment, as determined by a mental health professional qualified under the laws and regulations of the State.". *See* Ex. A, A-6, A-7; 42 U.S.C. § 10802(4)(A)-(B).

11. Palmer Home denies placement for children who have "a severe, chronic disability … attributable to a mental or physical impairment …[that] is likely to continue indefinitely results in substantial functional limitations in 3 or more of the following areas of major life

activity [including]: self-care, …expressive language, learning, mobility…" among others and needs "special… services, individualized supports, or other forms of assistance that are of lifelong…." *See* Ex. A, A-6; 42 C.F.R. § 51.2.

12. Palmer Home denies placement for children who have "a severe, chronic disability attributable to a mental or physical impairment that substantially limits one or more 'major life activities.'"[7] *See* Ex. A, A-6, A-7; *see also* 29 U.S.C. § 705(9) and 24 U.S.C. § 12102(2).

13. Palmer Home does not provide treatment services to individuals with severe physical, mental, developmental or intellectual needs. *See* Ex. A, A-6, A-7.

14. Palmer Home does not provide treatment services to individuals with certain behavioral or emotional diagnoses requiring specialized treatment and care, specifically denying placement to children with "diagnosed Mental Illness or Severe Emotional Disturbances, … or [with] certain trauma experiences or disorders requiring specialized clinical treatment and care." *See* Ex. A, A-6, A-7.

15. Palmer Home does not provide "treatment services" to children diagnosed with significant mental illness. *See* Ex. A, A-6.

16. Palmer Home does not provide "treatment services" to children with developmental disabilities, requiring special services for their entire lives. *See* Ex. A, A-6.

17. Palmer Home does not provide "treatment services" to children with chronic, severe disabilities. *See* Ex. A, A-6.

---

[7] Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2).

18. The allegations in the Complaint – which raised "serious concerns" – were investigated by the regulating state agency, MSDH, and found to be unsubstantiated. *See* Ex. A; Ex. B; Ex. C. The MSDH has continually renewed Palmer Home's certification as a child residential home, finding it to be in compliance with all requirements in applicable law and regulations. *See* Ex. F.

## II. SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). On a motion for summary judgment, the movant's initial burden requires a showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

To defeat summary judgment, the non-moving party must go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324. In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). However, there is no genuine issue of material fact "[i]f the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party." *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 439 (5th Cir. 2011). "[W]here the nonmoving party fails to establish

the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, no genuine issue of material fact can exist." *Apache Corp. v. W & T Offshore, Inc.*, 626 F.3d 789, 793 (5th Cir. 2010). "In such a situation, there can be 'no genuine issue to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

## III. ARGUMENT AND AUTHORITIES

As the Court noted in its Order, "PAIMI grants DRMS access to facilities providing *care or treatment* to persons with mental illness." [21] at 10 (emphasis in original) (citing 42 U.S.C. § 10802(4)(A)-(B)). And "PADD allows P&A systems access at reasonable times to any person with a developmental disability 'in a location in which services, supports, and other assistance are provided to such an individual.'" *Id.* at 15 (quoting 42 U.S.C. § 15043(a)(2)(H)). Essentially, PADD and PAIR authorize P&A systems access to "service providers" although "the regulation does not define 'service providers.'" *Id.* at 16 (citing 45 C.F.R. § 1326.19); 29 U.S.C. § 794e(a)(1)-(f). As set out herein, pursuant to the P&A statutes, Palmer Home is not a *facility,* nor does it provide *care or treatment* to persons with mental illness or disabilities as a "service provider." As demonstrated by DRMS's initial disclosures, all allegations against Palmer Home were investigated and found to be unsubstantiated. *See* Ex. B.

### A. Palmer Home is not a Facility under PAIMI.

PAIMI grants authority to P&A organization to access facilities providing care or treatment to mentally ill individuals. PAIMI defines "individual with mental illness" as "an individual (A) who has a significant mental illness or emotional impairment, as determined by a mental health

professional qualified under the laws and regulations of the State; and (B)(i)(I) who is an inpatient or resident in a *facility rendering care or treatment*...." 42 U.S.C. § 10802(4) (emphasis added).

1. *Palmer Home does not accept children diagnosed with mental illness.*

Palmer Home does not admit for placement individuals diagnosed with mental illness. *See* Ex. A, A-6, A-7. Palmer Home's Admissions and Discharge Policy could not be clearer: Palmer Home "does not currently have the capacity to provide care to medically fragile children and youth …," nor does Palmer Home have the "capacity to serve children and youths *with certain behavioral or emotional diagnoses requiring specialized treatment and care,* such as but not limited to: Children with history of patterned violence or aggression toward others, sexual reactivity or *diagnosed Mental Illness or Severe Emotional Disturbances ...* or certain trauma experiences or disorders *requiring specialized clinical treatment and care.*"[8] *Id.* (emphasis added). When Palmer Home's Admissions Policy and Guideline are compared to PAIMI, it is clear that Palmer Home does not accept applicants with "significant mental illness or emotional impairment, as determined by a mental health professional qualified under the laws and regulations of the State" requiring "care or treatment." *See* Ex. A, A-6, A-7.

The cases considered by the Court in its Order [21] in determining whether Palmer Home provides "care or treatment to persons with mental illness" can easily be distinguished. In *Michigan Protection & Advocacy Service, Inc. v. Miller,* 849 F. Supp. 1202, 1207 (W.D. Mich. 1994), the Michigan Department of Social Services ("MDSS") argued that it was not subject to PAIMI because (1) it did not house mentally ill persons as defined by PAIMI and (2) the primary purpose of its facilities was not to provide care and treatment of mentally ill persons. The District Court, however, disagreed, finding PAIMI applied to the youth training schools, detention centers

---

[8] Those trauma experiences or disorders include: active suicidal ideation, substance abuse disorders, history of pervasive sexual exploitation (child victims of sex trafficking), and eating disorders. ABW affidavit/policy.

and the state-wide foster care system under the operation of the MDSS, facilities which cannot screen and reject children. The *Miller* Court found that the P&A Service "had provided substantial evidence that defendant had housed minors with mental illness (as determined by mental health professionals) in the past, as well as recent evidence that some current residents *may be* mentally ill." *Id.*

In its analysis, this Court compared the MDSS—the state agency operating the foster care system in Michigan found to be subject to PAIMI – to the Mississippi State Department *of Health* as having "similar functions." [21] at 12-13. But these state agencies are not the same with similar functions. The Mississippi State Department of Health has a different purpose and mission and regulates Palmer Home as a child residential home under the Child Residential Home Notification Act, Miss. Code Ann. §§ 43-16-1 *et seq*. The comparable state agency with similar functions to the MDSS is the Mississippi Department of Child Protection Services ("MDCPS"), the statewide foster care system, which was separated from the Mississippi Department of Human Services ("MSDHS") in 2016 to serve as the lead child welfare agency for the state. Palmer Home is not a child-placing agency licensed or regulated by MDCPS. *See* Ex. D. If it were, it would have to accept every child referred to it by MDCPS regardless of its admissions policy and guideline. As a private, faith-based child residential home, Palmer Home can and does, in fact, deny placement to applicants if they have been diagnosed with significant mental illness.

DRMS suggests that this Court assume that *all* foster children have higher rates of mental health disorders than those in the general population without consideration of the actual children residing at Palmer Home. Unlike MDCPS, which must accept all referred children, Palmer Home selectively admits applicants. Palmer Home has rigorous intake and screening processes, as well as admissions policies and guidelines that screen out children with diagnosed mental illness

because Palmer Home does not have the capacity to serve them.[9] *See* Ex. A, A-6, A-7. And while MDCPS currently has over 4,000 children in state custody, Palmer Home's capacity is forty-eight (48) children, approximately one percent (1%) the population that MDCPS serves. *See* Ex. A; *see also* Miss. Dep't. of Child Prot. Servs., *GIS Directory*, https://gis.mdcps.ms.gov/directory/ (last visited April 24, 2025); Ex. D.  MDCPS has thousands of children in its custody. In contrast, Palmer Home cares for far fewer than its capacity of forty-eight in any given month. Ex. A. As demonstrated by its Referral Data over the last two and a half years, Palmer Home has averaged fewer than thirty (30) children on its campus monthly. *See* Ex. A, A-8.  Although the statistical studies that DRMS cited may be appropriately applied to the statewide foster care system (MDCPS),[10] which must accept all referrals regardless of their mental or emotional health, these studies have no application to a private, faith-based child residential home, serving at most forty-eight children, none of whom have been diagnosed with mental illness requiring care or treatment services. *See* Ex. A, A-8. Furthermore, Palmer Home's referral records confirm that applicants with "diagnosed mental illness or severe emotional disturbances" requiring treatment services are screened out and denied placement. Ex. A, A-6 – A-8.

Because it is undisputed that Palmer Home screens out children diagnosed with significant mental illness, the application of *J.H. ex rel. Gray v. Hinds Cnty., Miss.*, 2011 WL 3047667 (S.D. Miss. July 25, 2011) to Palmer Home also falls short. The facility at issue in *Gray* was a county-owned juvenile detention center, not a private child residential home licensed and regulated by MSDH. In *Gray*, the "court … held that DRMS had provided 'substantial evidence' that Henley-

---

[9] Palmer Home's "screening" is, in essence, the review of an applicant's Intake Application, Child Intake Screening Form, and the records/diagnoses released to Palmer Home through the Consent of Release form. It is not a medical test or examination. *Contra Screen*, Merriam-Webster's Medical Dictionary, https://www.merriam-webster.com/dictionary/screen#medicalDictionary (last visited April 23, 2025).
[10] [7] at 9, fn 6.

Young continued to house children with mental illness by pointing to statistical data – specifically, an article titled 'Prevalence of Mental Illness and Substance Abuse Disorders Among Incarcerated Juvenile Offenders.'" [21] at 13.[11]

The statistical data cited by the Court in *Gray* relates to "the prevalence of mental illness and substance abuse disorders *among incarcerated juvenile offenders in Mississippi*." 2011 WL 3047667 at *4 (emphasis added). Henley-Young is the Hinds County juvenile detention center, to which those statistics clearly applied. What is more, Hinds County conceded it was under DRMS's jurisdiction. *Id.* at *2. Henley-Young, as the county's juvenile detention center, has no ability to screen out mentally ill offenders and cannot deny placement to juveniles who have been sentenced to detention there. Palmer Home to the contrary can deny placement. This statistical data does not apply to Palmer Home as a private child residential home, which has the ability to and does, in fact, deny placement to children diagnosed with significant mental illness or emotional impairment.

### 2. *Palmer Home does not provide care or treatment services to children.*

Not only does Palmer Home not accept children diagnosed with "significant mental illness or emotional impairment," which is required to qualify as a "facility" under the PAIMI regulation, it does not *render[] care or treatment*" to its residents. 42 C.F.R. § 51.2 (emphasis added); Ex. A, A-6, A-7.[12] As the Court noted in its Order, the "relevant regulation under PAIMI describes 'care or treatment' in the collective as 'services provided….'" [21] at 14 (quoting 42 C.F.R. § 51.2). Because the Court was unclear "whether the services generally described on Palmer Home's

---

[11] *Gray*, 2011 WL 3047667, at *4 (citing *Prot. & Advocacy for Persons With Disabilities v. Armstrong,* 266 F. Supp. 2d 303, 314 (D. Conn. 2003)).

[12] The statute states the "term 'facilities' *may* include, but need not be limited to, hospitals, nursing homes, community facilities for individuals with mental illness, board and care homes, homeless shelters, and jails and prisons." 42 U.S.C. § 10802(3) (emphasis added).

website could constitute 'care or treatment' services described by PAIMI, the Court allowed DRMS to conduct discovery "to clarify what services Palmer Home provides to its residents…." [21] at 15, 18. The discovery also allowed Palmer Home to clarify for the Court that it does not render care or treatment services to children diagnosed with mental illness.

To be considered a "facility" subject to P&A authority, it must provide "care or treatment." The PAIMI regulation defines "care or treatment" as "*services provided to prevent, identify, reduce or stabilize mental illness or emotional impairment* such as mental health screening, evaluation, counseling, biomedical, behavioral and psychotherapies, supportive or other adjunctive therapies, medication supervision, special education and rehabilitation, even if only 'as needed' or under a contractual arrangement." 42 C.F.R. § 51.2 (emphasis added). In its intake and screening processes, Palmer Home asks if the child has a "mental or behavioral health diagnosis (depression, anxiety, bi-polar, ADHD, hyperactivity, oppositional defiant disorder)" and who diagnosed it, and obtains a release for every applicant's educational, psychological, psychiatric, medical, social and legal records. *See* Ex. A-3, A-4. After Palmer Home staff review these medical and mental health records, if a child needs services "to prevent, identify, reduce or stabilize mental illness," then Palmer Home screens them out and denies placement. *Id.*

Because Palmer Home is a child residential home, providing only "the lowest level of residential care, not behavioral residential care" and does not accept children with "behavioral or emotional diagnoses requiring specialized treatment and care" or children "with certain trauma experiences or disorders requiring specialized clinical treatment and care," Palmer Home denies those specified children for placement because it cannot provide "treatment and services" as contemplated by PAIMI. *See* Ex. A, A-6. The "holistic care" provided to children at Palmer Home "based on their unique physical, emotional, spiritual and educational needs" is nothing more than

general parental nurturing by houseparents and staff. *See* Ex. A, A-5. This holistic care is not clinical intervention, and it is certainly not services "to prevent, identify, reduce or stabilize mental illness or emotional impairment" as set out in the PAIMI regulation. Ex. A, A-1, A-6.

As the Court acknowledged, foster care homes are not expressly listed as falling under PAIMI's jurisdiction, noting, however, that the list of facilities in PAIMI is non-exhaustive. [21] at 11.[13] The District Court in the Western District of Texas has also considered PAIMI's non-exhaustive list of facilities but concluded that the term "includes" did not necessarily convey an "open-ended meaning." *Disability Rights Texas v. Pacillas*, 690 F. Supp.3d 654, 683 (W.D. Tex. 2023). The Court continued:

> Even if a list is "illustrative rather than exhaustive," it may be limited by the theme of the examples provided. (internal citation omitted). **The common thread in PAIMI's illustrative list of facilities is that they** *provide care or treatment services to people with mental illness*.

*Pacillas*, 690 F. Supp.3d at 683 (citing *Samantar v. Yousuf*, 560 U.S. 305, 316-317, 130 S. Ct. 2278, 176 L.Ed.2d 1047 (2010)) (double emphasis added); (also citing *Conn. Off. of Prot. & Advoc. For Persons with Disabilities v. Hartford Bd. of Educ.*, 464 F.3d 229, 240 (2d Cir. 2006)). Because Palmer Home does not provide "care or treatment services" to children with diagnosed mental illness, it shares no common thread with the listed facilities.

The evidence produced during discovery demonstrates that Palmer Home denies placement to children diagnosed with mental or emotional impairment and does not render "care or treatment" services as defined by PAIMI to its residents. Therefore, Palmer Home is not a "facility" within the meaning of PAIMI. DRMS does not have jurisdiction over Palmer Home pursuant to PAIMI, and Palmer Home is entitled to summary judgment.

---

[13] "The term 'facilities' may include, but need not be limited to, hospitals, nursing homes, community facilities for individuals with mental illness, board and care homes, homeless shelters and jails and prisons." [21] at 10-11 (quoting 42 U.S.C. § 10802(3)).

**B. Palmer Home is not a Service Provider under PADD or PAIR.**

DRMS alleged in its Complaint that based on "information and belief, a number of youths who reside at Palmer Home have … developmental disabilities, and/or other physical or mental impairments that substantially limit one or more life activities." [1] at ¶¶ 16. The only "factual" support of this allegation is a self-serving email that *DRMS sent to Palmer Home's counsel* that claimed its staff had "been in contact with the Mississippi Department of Health … [who] reported that … their investigator *did observe* children with disabilities during their last visit to the facility." [1] at ¶28, quoting Ex. F [1-6] (emphasis in original). Although DRMS said it would "have supporting documentation of these allegation from [the MSDH that] week," even a year later DRMS has failed to support its allegation with any records from the MSDH or to supply the identity of the MSDH investigator. Palmer Home, on the other hand, asked the MSDH to produce "records or logs of calls or other communications and/or correspondence between MSDH and Disability Rights Mississippi (DRMS) concerning, regarding, or relating to Palmer Home since 2022." Ex. C. The MSDH's response to that request was "[w]e don't have anything…. We've never spoken with or had any interaction with the Disability Rights of Mississippi." *Id.*

PADD and PAIR grant DRMS access to Palmer Home only if it offers "services, supports, and other assistance" to individuals with developmental disabilities or other disabilities. 42 U.S.C. § 15043(a)(2)(H); 29 U.S.C. § 794e(f). PADD defines "developmental disability" as:

> a *severe, chronic disability* of an individual that is attributable to a mental or physical impairment or combination of mental and physical impairments; is manifested before the individual attains age 22; is likely to continue indefinitely; results in *substantial functional limitations in 3 or more of the following areas of major life activity*: self-care; receptive and expressive language; learning; mobility; self-direction; capacity for independent living; economic self-sufficiency; and *reflects the individual's need for a combination and sequence of special, interdisciplinary, or generic services, individualized supports, or other forms of assistance that are of lifelong or extended duration and are individually planned and coordinated.*

42 U.S.C. § 15002(8) (emphasis added).[14] Similarly, disability under PAIR requires a "physical or mental impairment that *substantially limits one or more major life activities of such individual*…." 29 U.S.C. § 794e.[15] (emphasis added). Importantly, a child with a developmental or other disability requires "a combination and sequence of special, interdisciplinary, or generic services, individualized supports, or other forms of assistance that are of lifelong or extended duration." 42 U.S.C. § 15002(8).

Palmer Home does not "provide care or services to medically fragile children and youth, or those with severe physical, developmental or intellectual needs" or "children and youth requiring 24 hour personal assistance." Ex. A, A-6. Palmer Home specifically screens out children with severe, chronic disabilities attributable to a mental or physical impairment that substantially limits one or more "major life activities," requiring the "need for a combination and sequence of *special, interdisciplinary, or generic services, individuals supports*, or other forms of assistance

---

[14] As the Court noted, "the regulation does not define 'service providers.'" [21] at 16 (citing 45 C.F.R. § 1326.19).

[15] 29 U.S.C. §705(9): Disability
The term "disability" means--
    (A) except as otherwise provided in subparagraph (B), a physical or mental impairment that constitutes or results in a substantial impediment to employment; or
    (B) for purposes of sections 701, 711, and 712 of this title and subchapters II, IV, V, and VII, the meaning given it in section 12102 of Title 42.
The definition in 42 U.S.C. § 12102 provides as follows:
(1) Disability
The term "disability" means, with respect to an individual--
    (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
    (B) a record of such an impairment; or
    (C) being regarded as having such an impairment (as described in paragraph (3)).
(2) Major life activities
    (A) In general
        For purposes of paragraph (1), major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working…

*that are of lifelong or extended duration* and are *individually planned and coordinated*."[16] 42 U.S.C. § 15002(8) (emphasis added); Ex. A, A-3, A-4, A-6. Simply stated, the children who meet the definition of developmentally disabled under PADD or disabled under PAIR require specialized services and supports that Palmer Home does not provide, so it does not accept these children.

Addressing the Court's concern that no information was provided "relative to when [MSDH] last visited Palmer Home," the MSDH regularly inspects Palmer Home as a registered child residential home. [21] at 17; Ex. C. Records produced by MSDH in response to public records requests show that MSDH staff regularly visit Palmer Home for scheduled inspections, annual renewals and even unannounced visits throughout the year. Ex. A; Ex. C. Most recently, MSDH staff came to Palmer Home on December 16, 2024 for its annual renewal visit for 2025. Ex. A, A-12; Ex. C. The MSDH renewed Palmer Home's registration as a child residential home for 2025 as it has done continually since Palmer Home has been registered with the MSDH as a child residential home under Miss. Code §§ 43-16-1 *et seq.* Ex. F (collective exhibit, containing the Miss. State Board of Health – Child Residential Home Registrations from 2020-2025).

Palmer Home does not accept for placement children with "severe, chronic disabilities" as defined by PADD or PAIR that need specialized care and treatment services. Thus, there are no issues of material fact as to whether Palmer Home is a "service provider" under PADD or PAIR, and Palmer Home is entitled to summary judgment.

---

[16] Palmer Home's "screening" is, in essence, the review of an applicant's Child Intake Application, Intake Screening Form, and the documentation received pursuant to the Consent of Release of Information/Documents. It is not a medical test or examination for the presence of something. *Cf. Screen*, Merriam-Webster's Medical Dictionary, https://www.merriam-webster.com/dictionary/screen#medicalDictionary (last visited April 23, 2025).

**C. Palmer Home is Entitled to Summary Judgment because DRMS has failed to Show Probable Cause of Abuse and Neglect.**

Palmer Home has demonstrated that it does not provide care or treatment services to children diagnosed with significant mental illness or severe, chronic disabilities, entitling it to summary judgment. If, however, the Court disagrees, it is clear that DRMS has failed to provide any support for its probable cause determination that such mentally ill or disabled children were being abused or neglected at Palmer Home. *See Iowa Protection and Advocacy Services, Inc. v. Gerard Treatment Programs, L.L.C.*, 152 F. Supp. 2d 1150, 1172 n.1 (N.D. Iowa 2001) (noting that the Defendant was not "barred from seeking judicial review of the sufficiency of [Plaintiffs'] probable cause for its expanded investigation."). DRMS's only allegation of potential abuse and neglect was that in "late 2023" DRMS received a complaint outlining "several serious concerns from former staff and residents, including the hiring of a convicted felon as campus director, instances of residents becoming pregnant while in care, allegations of verbal and emotional abuse, reports of suicide, and the termination of staff members who attempted to report these incidents." [1] at 4, ¶ 20. These same allegations were investigated by the MSDH, the state agency charged with licensing and oversight of child residential homes. MSDH determined the allegations were all unsubstantiated. *See* Ex. B.[17]

A February 13, 2023 MSDH Child Care Licensure Investigation Form, produced by DRMS in its Initial Disclosures, references October and November 2022 investigations by MSDH staff. Ex. B. The agency investigated the complaint that Palmer Home had violated Rule 3.4.3 Initial Notification Requirements, which requires fingerprinting and criminal record background checks be done of its entire staff. The MSDH found that claim to "Unsubstantiated." Ex. B. [18] Letters of

---

[17] Ex. B, specifically, DRMS_INITIAL038-045, 55-56.
[18] DRMS_INITIAL043.

Suitability, required by statute and regulation, for its roster of employees were verified. *Id.* Furthermore, the complaint received on October 27, 2022, that Palmer Home had violated Rule 3.8.1 Required Written Policies, was also investigated by MSDH in early February 2023. *Id.* Investigators determined that the required policies were in place, all background checks had been conducted, and that this complaint was unsubstantiated. Ex. B;[19] Ex. A, A-9—A-11.  Again, shortly after the MSDH's investigation, MSDH staff again met with Palmer Home staff "to discuss the final findings from [the] investigation which was unsubstantiated." Ex. B.[20] Notably, MSDH's report stated that a follow-up complaint regarding TikTok videos was also "unsubstantiated." Ex. B.[21] Upon concluding its investigation, MSDH's recommendation was "[i]f CPS come visit for any reason contact licensing official immediately. Their visit was on Friday pertaining to the same issue, no report was given." *Id.* So, based on the MSDH reports produced by DRMS, both MSDH and MDCPS investigated these 2023 allegations, and either found them unsubstantiated or issued no report.

MSDH staff were again on Palmer Home's campus in March of 2023 "to investigate complaint [received] on 2/23/2023." Ex. B.[22] The complaint alleged violations of MSDH Rules 1.7.1 Serious Occurrence Involving Children, Rule 1.7.2 Healthy, Hygiene, & Safety, and Rule 1.14.1 Discipline & Guidance/Prohibited Behavior, which the MSDH investigated in its inspections in November 2022 and February 2023. *Id.* All questions in the report were answered to the MSDH's satisfaction.  *Id.* A few months later in June 2023, MSDH staff made an unannounced visit and inspected the cottages in which children reside with their houseparents. One cottage's kitchen sanitation checklist noted the need for a posted food permit and manager

---

[19] DRMS_INITIAL045.
[20] DRMS_INITIAL040.
[21] DRMS_INITIAL041.
[22] DRMS_INITIAL038.

certification, but all cottages were otherwise in compliance. Ex. B.[23] On December 28, 2023, MSDH staff met with Palmer Home staff for its 2024 renewal visit and found all documents necessary for renewal, including fingerprint and criminal background checks, affidavits and "letter of suitability" record checks for all employees, were in compliance. Ex. B.[24] The MSDH subsequently renewed Palmer Home's registration for 2024. Ex. F.

Even if Palmer Home were a facility or service provider subject to the P&A Acts, DRMS's own initial disclosures – everything it "has in its possession, custody, or control and may use to support its claims" –  demonstrate that its allegations from 2023 have been investigated by the state agency that regulates Palmer Home and found all claims to be unsubstantiated, so there is no probable cause to warrant DRMS's request for access to Palmer Home's campus, its residents or any confidential records. Fed. R. Civ. P. 26(a)(2)(A)(ii); s*ee e.g., Charlotte-Mecklenburg Bd. of Ed. v. Disability Rights of North Carolina*, 430 F. Supp. 3d 74, 84 (W.D. N.C. Dec. 31, 2019) (holding P&A's evidence was insufficient to support DRNC's probable cause and DRNC failed to come forward with any evidence to support its probable cause under PADD or PAIR). Therefore, DRMS's unsupported and unsubstantiated allegations do not create a genuine issue of material fact for trial. *Dediol*, 655 F.3d at 439.

## V. CONCLUSION

For the foregoing reasons, Defendant, Palmer Home for Children request that the Court enter summary judgment on all of DRMS's claims, dismiss them all with prejudice, and further pray for all other relief to which they are entitled.

Respectfully submitted,

*s/Amanda J. Tollison*
Amanda J. Tollison (MB # 10313)

---

[23] DRMS_INITIAL051.
[24] DRMS_INITIAL035-036.

BUTLER SNOW LLP
1200 Jefferson Avenue, Suite 205
P.O. Box 1138
Oxford, MS 38655
P: (662) 513-8000
F: (662) 513-8001
amanda.tollison@butlersnow.com

OF COUNSEL:

J. Dillon Pitts (MB # 106399)
BUTLER SNOW LLP
1020 Highland Colony Parkway, Ste. 1400
Ridgeland, Mississippi 39157
P: (601) 948-5711
F: (601) 985-4500
dillon.pitts@butlersnow.com

*Attorneys for Palmer Home for Children*

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day filed the foregoing via the Court's ECF system, which will deliver copies to all counsel of record.

This the 25th day of April, 2025.


*s/Amanda J. Tollison*
Amanda J. Tollison